HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANGELA KOLEBUCK-UTZ individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WHITEPAGES, INC.,<br><br>Defendant. | Case No. 21-cv-00053-JCC<br><br>WHITEPAGES, INC.'S MOTION TO DISMISS<br><br>**NOTE ON MOTION CALENDAR:**<br>**April 2, 2021** |

### I.     INTRODUCTION

Angela Kolebuck-Utz asks this Court to prevent Whitepages, Inc. (Whitepages) from providing its users with what she refers to as a "preview"[1] of directory information about a searched individual (Whitepages' product) coupled with a list of pricing options for purchasing additional information. But her Complaint makes plain that Whitepages' conduct does not fall within the conduct proscribed by Ohio's right of publicity statute because she acknowledges that Whitepages may display her name in selling access to public information about her, and Whitepages displays no other information protected by the statute. In addition, the statute does not

---

[1] Whitepages does not agree that "free preview" accurately describes what Whitepages displays, but, for purposes of this motion, accepts that label. The information in what Kolebuck-Utz terms the "free preview" is directory information, and, not unlike the news provided for free by news media with a paywall, is not a "preview" of what is behind the paywall but is instead information provided for free.

WHITEPAGES, INC.'S MOTION TO DISMISS - 1
(Case No. 21-cv-00053-JCC)

apply because her name does not have "commercial value." Finally, the First Amendment, Ohio's Constitution, and the Communications Decency Act, 47 U.S.C. § 230, all protect Whitepages' free display of directory information.

For each of these independent reasons, Kolebuck-Utz has failed to state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court should dismiss the action with prejudice and without leave to amend.

## II. RELEVANT ALLEGATIONS

Kolebuck-Utz's putative class action complaint accuses Whitepages of violating Ohio's right of publicity statute, Ohio Rev. Code Ann. ch. 2741. Kolebuck-Utz alleges that Whitepages "operates a website [www.whitepages.com] that sells 'background reports' on people to the general public." Dkt. 1 ¶¶ 1-2. Kolebuck-Utz alleges that members of the public can access www.whitepages.com to search the first and last name of any individual and receive a list of search results "correspond[ing]" to people whose names match the searched name. Dkt. 1 ¶¶ 3-4. She pleads that the search results provide a "limited, free preview" of the full background report and can include "the searched individual's name (including middle initials), age, current city and state of residence, the searched individual's relatives, and other identifying information." Dkt. 1 ¶ 5. The information available via Whitepages—including the information provided on the "preview" page—is "compile[d]" from publicly available records and then displayed via its website. Dkt. 1 ¶ 13.

Kolebuck-Utz alleges that the "limited, free preview" of the searched individual's information is designed "to entice users to purchase [Whitepages'] services." Dkt. 1 ¶¶ 7-8. According to Kolebuck-Utz, to access the "preview" of a searched individual and pricing information to obtain more information, a Whitepages user must undertake a series of steps. The user must access www.whitepages.com, enter the searched individual's name in the search field, and then click on the "Search" button. Dkt. 1 ¶ 4. She says this will pull up a listing of search results that match the name entered by the user, along with a "preview" of the information

WHITEPAGES, INC.'S MOTION TO DISMISS - 2
(Case No. 21-cv-00053-JCC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700  FAX (206) 623-8717

available for each of the listed names. Dkt. 1 ¶¶ 4-5. From there, a user can access further information responsive to a search term only by clicking on "View Details," "View Full Report," "Unlock Full Report," or "Sign Up" buttons located on the "preview" page. Dkt. 1 ¶ 9. Clicking one of those buttons leads the user to a pay screen which, according to Kolebuck-Utz, presents the user with various payment options, including "an option to pay for Whitepages' monthly subscription services." Dkt. 1 ¶¶ 9-10. According to the Complaint, Whitepages' monthly subscription allows users to obtain background reports using its services for an unlimited number of searches per month. Dkt. 1 ¶ 12.

Depending on how a user accesses Whitepages' payment option page, the searched name and other information (*e.g.*, age, names of relatives) may appear at the top of the payment page. Dkt. 1 ¶¶ 5, 10. Kolebuck-Utz alleges that Whitepages' inclusion of the payment options at the bottom of the "preview" page violates Ohio's right of publicity law. Dkt. 1 ¶¶ 14-15. She alleges that it "would be simple for Whitepages to maintain [its] business model while still complying with state law." Dkt. 1 ¶ 16. Whitepages could, for example, "merely display the names of the searched individuals—without more identifying information—in their advertisements for their services." Dkt. 1 ¶ 16.

### III. ARGUMENT

**A. A Claim Should Be Dismissed Where the Facts as Pled Establish That the Plaintiff Cannot Prevail.**

When determining whether a claim has been sufficiently pled to survive a Rule 12(b)(6) motion for "failure to state a claim upon which relief can be granted," *id.*, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party," but need "not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations,'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678

WHITEPAGES, INC.'S MOTION TO DISMISS - 3
(Case No. 21-cv-00053-JCC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700    FAX (206) 623-8717

(2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (citation omitted)). "Whether the case can be dismissed on the pleadings depends on what the pleadings say," which means that "[a] plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (citation omitted).

B.  **Whitepages' Use of Kolebuck-Utz's Name Does Not Violate Ohio's Right of Publicity Statute.**

Ohio's right of publicity statute makes unlawful the "use" of "any aspect of an individual's persona for a commercial purpose" absent "written consent." Ohio Rev. Code Ann. § 2741.02(A)-(B). The statute defines "persona" to mean "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." Ohio Rev. Code Ann. § 2741.01(A).

According to Kolebuck-Utz, Whitepages violated Ohio's right of publicity statute when it "use[d] [her] personal identifiable information to entice viewers to purchase [Whitepages'] subscription service." Dkt. 1 ¶ 10. Kolebuck-Utz does not allege that Whitepages used her "voice, signature, photograph, image, likeness, or distinctive appearance" (Ohio Rev. Code Ann. § 2741.01(A)) in the "free, limited preview" about which she complains (Dkt. 1 ¶ 5), or otherwise (*see generally* Dkt. 1). That means she must prove that Whitepages used her "name" in violation of the statute, the only other definitional aspect of "persona." Ohio Rev. Code Ann. § 2741.01(A). But she *pleads* that Whitepages would be in compliance with Ohio's right of publicity statute if Whitepages "merely display[ed] the names of the searched individuals—without more identifying information—in their advertisements for their services." Dkt. 1 ¶ 16. For this reason alone, Kolebuck-Utz's claim against Whitepages fails as a matter of law.

Kolebuck-Utz also fails to allege facts which, if proven, could establish that her name "ha[s] commercial value" (Ohio Rev. Code Ann. § 2741.01(A)). According to Ohio case law, that deficiency means that her claim fails as a matter of law. In *Harvey v. Systems Effect, LLC*, 154

WHITEPAGES, INC.'S MOTION TO DISMISS - 4
(Case No. 21-cv-00053-JCC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

N.E.3d 293 (Ohio Ct. App. 2020),[2] the court held that Ohio's statutory right of publicity requirements were "consistent with" common law principles it identified from the *Restatement (Third) of Unfair Competition*, including that "commercial value" means the plaintiff must prove "his or her ability to market [the name or likeness] for commercial purposes." *Id.* at 308-09; *see also Roe*, 714 F. App'x at 568 ("While plaintiffs need not be national celebrities to assert a right of publicity claim," under the Ohio statute, "they must at least 'demonstrate that there is value in associating an item of commerce with [their] identity.'") (citations omitted)). Thus, "the use of a person's identity primarily for the purpose of communicating information . . . is not generally actionable," except "if the name or likeness is used solely to attract attention to a work that is *not related to the identified person*" or "the work contains substantial falsifications." *Harvey*, 154 N.E.3d at 308 (quoting the *Restatement, supra*) (emphasis added). In *Harvey*, that meant that the plaintiff, who had failed to disclose termite damage in selling her home, had no right of publicity in her name such that she could prevent the defendant from using it in training materials it sold to real estate agents. *Id.* at 295, 309.

     Kolebuck-Utz has failed to plead any facts from which the Court can infer that she has the "ability to market" her name "for commercial purposes" separate from the "commercial purpose" of "communicating information" connected by public records to her name as a search term. *See id.* at 308. That is, the only "commercial value" Kolebuck-Utz identifies for her name is that someone may be willing to pay Whitepages for the information it has related to her name as a search term. Under *Harvey*, that is insufficient because her name "is used solely to attract attention to" a product *directly related* "to the identified person." *Id.* at 308. Accordingly, her claim "[i]s not within the claims intended to be protected under [Ohio's right of publicity] statute." *Id.* at 295.

---

[2] While *Harvey* is an intermediate state appellate court decision, there is otherwise "a paucity of precedent" regarding the statute, *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017), and no reason to conclude that the Supreme Court of Ohio would decide otherwise, *see T-Mobile USA Inc. v. Sel. Ins. Co. of Am.*, 908 F.3d 581, 586 (9th Cir. 2018) ("An intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" (citation omitted)).

WHITEPAGES, INC.'S MOTION TO DISMISS - 5
(Case No. 21-cv-00053-JCC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700  FAX (206) 623-8717

In addition, the provision of that information by Whitepages (her name as a search term and information gathered from public records related to that search term) is, as a matter of law, not "commercial speech" and therefore does not have "commercial value." Directory information is noncommercial speech and therefore is entitled to the highest level of First Amendment protection. *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 963 (9th Cir. 2012) ("telephone listings and community information contained in the directory constitute noncommercial speech"). The fact that Whitepages provides some of the information on a subscription basis does not change the character of the speech. *Id.* at 963 (holding that "[a] newspaper or magazine could be subscription-only and contain no advertisements" and would still be entitled to full First Amendment protection and therefore strict scrutiny of any state law restrictions); *Nieman v. VersusLaw, Inc.*, 512 F. App'x 635, 638 (7th Cir. 2013) ("The for-profit nature of the defendants' aggregation websites does not change the analysis; speech is protected even when 'carried in a form that is "sold" for profit.'" (citation omitted)). Because the alleged sale of Kolebuck-Utz's name in connection with selling directory information is not "commercial speech," her name cannot be said to have "commercial value."

Kolebuck-Utz concedes that Whitepages may use her name in selling a subscription product in response to a search for her name. In addition, her name does not have "commercial value" as that term has been interpreted by an Ohio court or under First Amendment jurisprudence. For each of those independent reasons, Whitepages' use of Kolebuck-Utz's name in the "free preview" in response to a search for her name does not fall within Ohio's statutory definition of "persona" (Ohio Rev. Code Ann. § 2741.01(A)) and therefore does not violate the statute.

**C.  Whitepages' Content—Including the "Free Preview"—Is Protected by the First Amendment and the Ohio Constitution.**

Independently, the Court should dismiss the action because the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution (Section 11) protect

WHITEPAGES, INC.'S MOTION TO DISMISS - 6
(Case No. 21-cv-00053-JCC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Whitepages' display of directory information related to Kolebuck-Utz as a search term.[3] Even though Kolebuck-Utz alleges that the "preview" solicits money in exchange for additional information, the "preview" itself (like the additional information) displays noncommercial speech protected by the First Amendment.[4] Application of the Ohio statute to it is a content-based restriction that cannot survive strict or even intermediate scrutiny.

*The "preview" is noncommercial speech.* The "free preview" Kolebuck-Utz pleads violates Ohio law is itself directory and other public information that is noncommercial speech protected by the First Amendment. *Dex Media W.*, 696 F.3d at 957 (directory information is noncommercial speech); *see also Nieman*, 512 F. App'x at 637 (companies selling public information about people, including court records, were equally protected by the First Amendment as the media, citing *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496 (1975)); *cf. Citizens United v. FEC*, 558 U.S. 310, 342 (2010) ("First Amendment protection extends to corporations").

> [S]peech does not lose its First Amendment protection because money is spent to project it, as in a paid advertisement of one form or another. Speech likewise is protected even though it is carried in a form that is "sold" for profit, and even though it may involve a solicitation to purchase or otherwise pay or contribute money.

*Virginia State Bd. of Pharm. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976) (citations omitted)). It is inconsequential that the subscription may offer directory information of others besides Kolebuck-Utz. Were it otherwise, an online newspaper with a paywall would lose First Amendment protection over a preview of a news article displayed with an advertisement to subscribe.

---

[3] The Ohio Supreme Court has held that the "First Amendment is the proper basis for interpretation of Section 11" in recognition that free speech guarantees under the Ohio Constitution "are no broader than those guaranteed by the First Amendment to the United States Constitution." *Cleveland v. Trzebuckowski*, 709 N.E.2d 1148, 1152 (Ohio 1999) (citing *Eastwood Mall, Inc. v. Slanco*, 626 N.E.2d 59, 61 (Ohio 1994)). Accordingly, and for conciseness, Whitepages will refer to the First Amendment and Section 11 collectively as the First Amendment.

[4] The Ohio General Assembly recognized that it could not infringe constitutional rights by legislation, providing in the statute that the statute "does not apply to . . . use of the persona of an individual that is protected by the First Amendment to the United States Constitution as long as the use does not convey or reasonably suggest endorsement by the individual whose persona is at issue" and "does not affect rights or privileges recognized under the Ohio Constitution or United States Constitution." Ohio Rev. Code Ann. § 2741.09(A)(6), (B).

WHITEPAGES, INC.'S MOTION TO DISMISS - 7
(Case No. 21-cv-00053-JCC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Even if the "free preview" itself were not protected speech, "[a] simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech. Otherwise, virtually any newspaper, magazine, or book for sale could be considered a commercial publication." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021). That is, an advertisement for speech protected by the First Amendment which merely previews the protected speech is itself protected by the First Amendment. *Id.*; *see also Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 n.14 (1983) (although pamphlet providing public health information along with advertisement for contraceptives was commercial speech, "a different conclusion may be appropriate in a case where the pamphlet advertises an activity itself protected by the First Amendment").

*Ohio's statute is a content-based restriction.* Ohio's statute is a "content-based restriction" because "by its very terms, [it] singles out particular content" (here, information about a person) "for differential treatment." *Dex Media W.*, 696 F.3d at 957 (quoting *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc)).

*Suppressing Whitepages' speech is not warranted.* Because the "free preview" is noncommercial speech and the statute is a content-based restriction, strict scrutiny applies. *See Dex Media W.*, 696 F.3d at 965. Strict scrutiny means Ohio's statute must be "the least restrictive means available to further a compelling government interest." *Id.* (quoting *Berger*, 463 U.S. at 1050). If there is no compelling government interest or the statute is not the least restrictive means to further that interest, the statute cannot be applied to suppress Whitepages from providing directory information on its website. "[O]nly in the most extraordinary circumstances" is this standard met. *Id.* (quoting *Bolger*, 463 U.S. at 65).

If, on the other hand, the Court determines that Whitepages' "free preview" is commercial, intermediate scrutiny applies. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011). Intermediate scrutiny requires that Ohio's statute "directly advance[] a substantial governmental interest and" be "drawn to achieve that interest." *See id.*

WHITEPAGES, INC.'S MOTION TO DISMISS - 8
(Case No. 21-cv-00053-JCC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

Under either level of scrutiny, the proponent of the regulation (here, Kolebuck-Utz)—not the regulated speaker (here, Whitepages)—has the burden of proof. *See United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816-17 (2000) (collecting cases involving commercial and noncommercial speech and holding that "'[c]ontent-based regulations are presumptively invalid,' and" the proponent of the regulation "bears the burden to rebut that presumption" (citation omitted)).

While "speech which either appropriates the economic value of a performance or persona or seeks to capitalize off a celebrity's image in commercial advertisements is unprotected by the First Amendment against a [state law] right-of-publicity claim," the government "*has no interest*" in protecting a right of publicity in a person who has not "'ma[de] the investment required to produce a performance of interest to the public,' or invest[ed] time and money to build up economic value in a marketable performance or identity." *Sarver v. Chartier*, 813 F.3d 891, 905 (9th Cir. 2016) (citation omitted) (emphasis added).

Nothing in Kolebuck-Utz's complaint suggests that she is a person for whom a statute restricting speech based on a right of publicity overcomes the First Amendment. *Sarver* is dispositive of Kolebuck-Utz's claim.

### D. The Communications Decency Act Immunizes Whitepages from Claims That Its Content Violates State Law.

Kolebuck-Utz's claim also is barred by the Communications Decency Act (CDA). The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," thus immunizing service providers from liability for any information created by a third party. 47 U.S.C. § 230(c)(1), (e)(3); *see also Perfect10, Inc. v. CC Bill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007) (CDA immunity applicable to state law right of publicity claims). While CDA immunity does not apply to "the creation of content" by a website, *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1246 (N.D. Cal. 2014) (citing 47 U.S.C. § 230(f)(3)), nothing in Kolebuck-Utz's complaint

WHITEPAGES, INC.'S MOTION TO DISMISS - 9
(Case No. 21-cv-00053-JCC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

suggests that Whitepages creates or otherwise alters the content displayed when a user searches for a person using www.whitepages.com. *See Carafano v. Metrosplash.com*, 339 F.3d 1119, 1125 (9th Cir. 2003) (section 230 immunity applies where website "did not play a significant role in creating, developing or 'transforming' the relevant information").

To the contrary, Kolebuck-Utz alleges only that Whitepages "compiles and generates the content it sells on its website," content originating from and developed by sources other than Whitepages. Dkt. 1 ¶ 13 ("Whitepages offers . . . contact information and criminal records . . . compiled from records in all 50 states."). In other words, Kolebuck-Utz alleges that Whitepages, like an ordinary search engine, is merely a "passive transmitter of information provided by others." *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1166 (9th Cir. 2008) (en banc) (search engines "play no part" in development of searches and therefore entitled to section 230 immunity). Consequently, Whitepages, as an "intermediary . . . indifferent to the content of what it transmits," *Backpage.com, LLC v. Dart*, 807 F.3d 229, 233 (7th Cir. 2015), is entitled to immunity under section 230, as other courts already have recognized, *Obado v. Magedson*, 612 F. App'x 90, 93 (3d Cir. 2015) (affirming trial court's determination that Whitepages was internet host provider entitled to immunity under the CDA); *Nasser v. WhitePages, Inc.*, No. 12-097, 2013 WL 6147677, at *3 (W.D. Va. Nov. 22, 2013) (Whitepages "clearly an interactive computer service within the meaning of the [CDA]" because "data is created and provided by third parties"). The Court should dismiss Kolebuck-Utz's claim against Whitepages on section 230 grounds alone.

### E. Dismissal Should Be without Leave to Amend and with Prejudice.

Kolebuck-Utz's claim against Whitepages fails as a matter of law and cannot be cured by amendment because no matter how she pleads, the First Amendment and the CDA protect Whitepages against her claim. Where, as here, the deficiency in a complaint cannot be cured by amendment, dismissal of the action with prejudice and without leave to amend is appropriate. *Parents for Priv. v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020) (affirming dismissal with prejudice

WHITEPAGES, INC.'S MOTION TO DISMISS - 10
(Case No. 21-cv-00053-JCC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717

and without leave to amend for failure to state a claim because "amendment would simply be a futile exercise").

## IV. CONCLUSION

For the foregoing reasons, Whitepages requests the Court dismiss Kolebuck-Utz's action with prejudice and without leave to amend.

DATED this 25th day of February, 2021.

HARRIGAN LEYH FARMER & THOMSEN LLP

By: *s/ Timothy G. Leyh*
By: *s/ Tyler L. Farmer*
By: *s/ Kristin E. Ballinger*
Timothy G. Leyh, WSBA #14853
Tyler L. Farmer, WSBA #39912
Kristin E. Ballinger, WSBA #28253
999 Third Avenue, Suite 4400
Seattle, WA 98104
Tel: (206) 623-1700
Fax: (206) 623-8717
Email: timl@harriganleyh.com
Email: tylerf@harriganleyh.com
Email: kristinb@harriganleyh.com

*Attorneys for Whitepages, Inc.*

WHITEPAGES, INC.'S MOTION TO DISMISS - 11
(Case No. 21-cv-00053-JCC)

LAW OFFICES
**HARRIGAN LEYH FARMER & THOMSEN LLP**
999 THIRD AVENUE, SUITE 4400
SEATTLE, WASHINGTON 98104
TEL (206) 623-1700   FAX (206) 623-8717