1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

11

**WESTERN DISTRICT OF WASHINGTON**

12
13

ANGELA KOLEBUCK-UTZ, individually and
on behalf of all others similarly situated,

14

Plaintiff,

15

v.

16

WHITEPAGES INC.,

17
18

Defendant.

Case No. 21-cv-00053-JCC

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

**TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ..................................................................................................1

        A.      Factual Background ................................................................................1

        B.      Statutory Background ............................................................................3

III.    STANDARD OF REVIEW ..................................................................................4

IV.     ARGUMENT ........................................................................................................5

        A.      Whitepages' Use of Plaintiff's Identity In Its Advertisements
                Violates Ohio's Right of Publicity Statute ...........................................5

                1.      Defendant Mischaracterizes Plaintiff's Complaint ..................5

                2.      Plaintiff's Name As Used In Defendant's Advertisements Has
                        Commercial Value ...................................................................6

        B.      Whitepages' Advertisements Are Not Protected By The First
                Amendment Or The Ohio Constitution ..................................................9

                1.      Defendant's Challenged Conduct Is Commercial Speech..........9

                2.      The Court Need Not Balance The Interests Because
                        Defendant's Advertisements Impair The Informational
                        Function of Advertising............................................................13

                3.      The Ohio Right of Publicity Statute As Applied To The
                        Instant Case Survives Intermediate Scrutiny...........................14

        C.      The Communications Decency Act Does Not Have Any Bearing On
                The Dispute Because Whitepages' Advertisements Were Created By
                Whitepages ............................................................................................15

V.      CONCLUSION ..................................................................................................16

1

## TABLE OF AUTHORITIES

2

**PAGE(S)**

3

**CASES**

4

*Al-Kidd v. Ashcroft*,
    580 F.3d 949 (9th Cir. 2009) ........................................................................................ 4

5

6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................... 4

7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................... 4

8

9

*Board of Trustees of State University of New York v. Fox*,
    492 U.S. 469 (1989) .................................................................................................. 10

10

11

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60, 103 S. Ct. 2875, 77 L.Ed.2d 469 (1983) ............................................ 10

12

13

*Bosley v. Wildwett.com*,
    310 F. Supp. 2d 914 (N.D. Ohio 2004) ...........................................................Passim

14

*Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*,
    447 U.S. 557 (1980) .................................................................................................. 13

15

16

*Chicago Lawyers' Committee For Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
    519 F.3d 666 (7th Cir. 2008) .................................................................................... 16

17

18

*Cincinnati Arts Assn. v. Jones*,
    777 N.E.2d 346 (Ohio 2002) .................................................................................... 15

19

20

*DeSmet ex rel. Estate of Hays v. Cnty. of Rock Island*,
    848 N.E.2d 1030 (Ill. 2006) ....................................................................................... 9

21

*Dex Media W., Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) .............................................................................. 10, 11

22

23

*Eastwood Mall, Inc. v. Slanco*,
    626 N.E.2d 59 (Ohio 1994) ...................................................................................... 15

24

25

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .................................................................................. 16

26

27

*Harvey v. Systems Effect, LLC*,
    154 N.E.3d 293 (Ohio Ct. App. 2020) ....................................................................... 6

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC

-ii-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

*Hunt v. City of Los Angeles*,
  638 F.3d 703 (9th Cir. 2011) ................................................................. 10

*ICF Technology, Inc. v. Google, Inc.*,
  2013 WL 6728826 (W.D. Wash Dec. 20, 2013) ...................................... 15

*Lukis v. Whitepages Inc.*,
  454 F. Supp. 3d 746 (N.D. Ill. 2020) ............................................... Passim

*Lukis v. Whitepages Inc.*,
  2020 WL 6287369 ............................................................................ 9, 10

*Nieman v. VersusLaw, Inc.*,
  512 F. App'x 635 (7th Cir. 2013) .......................................................... 11

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016) ........................................................... 12, 13

*Vinci v. American Can Co.*,
  459 N.E.2d 507 (Ohio 1984) .................................................................. 13

*Zacchini v. Scripps-Howard Broadcasting Co.*,
  433 U.S. 562 (1977) ............................................................................... 14

**STATUTES**

47 U.S.C. § 230(c)(1) ................................................................................. 16

765 Ill. Comp. Stat. Ann. 1075/30 .............................................................. 9

Ohio Const. Article I, Section 11 ............................................................... 15

Ohio Revised Code § 2741.01 ........................................................... 1, 3, 17

Ohio Revised Code § 2741.01(A) ................................................................. 4

**RULES**

Fed. R. Civ. P. 5.1(a) ................................................................................. 10

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC
-iii-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

1

## I.    INTRODUCTION

This case centers around advertisements Defendant Whitepages Inc. ("Defendant" or "Whitepages") created to utilize the identities of Plaintiff Angela Kolebuck-Utz ("Plaintiff") and members of the putative class to sell its subscription services.  Neither Plaintiff nor any other member of the putative class consented to the use of their identities to promote Whitepages' business.

Defendant's advertisements were plainly created in the hope that a visitor who visited their website would see the name and other identifying information of a person that she was acquainted with (such as Plaintiff), and be enticed by Defendant's placement of Plaintiff's persona in the advertisements to subscribe to Defendant's services.  This conduct violates Ohio Revised Code § 2741.01, *et. seq*, which provides a private right of action to an individual whose right of publicity has been violated by a defendant who used the individual's persona for a commercial purpose without consent.

In response to the Complaint (Dkt. No. 1) ("Compl." or "Complaint"), Defendant moves to dismiss (Dkt. No. 12) ("MTD") by making the same arguments that have already been rejected twice in a nearly identical case under Illinois law.  See *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020) (MTD denied); *Lukis v. Whitepages Inc.*, 2020 WL 6287369 (N.D. Ill. Oct 27, 2020) (Mtn. for Reconsideration denied).  In *Lukis*, as in the instant case, Whitepages relied upon a mischaracterization of the case and the same First Amendment arguments.  This Court should follow Judge Feinerman's lead and deny Defendant's motion in its entirety.

## II.    BACKGROUND

### A.    Factual Background

Defendant owns and operates a website that sells "background reports" to the general public.  Compl. ¶ 1.  Upon accessing Defendant's website, the public-at-large is free to enter the first and last name of a particular individual via a search bar on the homepage.  *Id.* ¶ 3.  After entering this information, Whitepages provides a listing of search results.  *Id.* ¶ 4.  Each search result corresponds to an actual person that Whitepages believes matches the name provided by the public user.  *Id.*  These search results provide a limited, free preview of Defendant's

1  "Reports."  *Id.*  As shown in the images below, this free preview includes the searched

2  individual's name (including middle initials), age, current city and state of residence, the

3  searched individual's relatives, and other identifying information:





*Id.* ¶ 5.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-cv-00053-JCC

-2-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

Defendant then uses that individual's name and other identifying information in the advertisements to market subscription services that allow buyers to access an unlimited number of these reports per month. *Id.* ¶¶ 5, 7, 10-12. An example of these advertisements is below:



*Id.* ¶ 5.

These advertisements include the names and other personal details of Plaintiff and other members of the putative class. *Id.* ¶¶ 5, 24. Plaintiff never provided Whitepages with consent to use any attribute of her identity in any advertisement or for any commercial purposes. *Id.* ¶ 25.

**B.      Statutory Background**

Ohio Revised Code § 2741.01, *et. seq* ("The Ohio Right of Publicity Statute") was enacted to create a private right of action to protect an individual's property right to her "persona" from being used to promote a business without her consent:

"to create a right of publicity in an individual's 'persona,' to

declare that the right of publicity is a property right, to specify that

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC                                                          -3-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

the right of publicity is transferable and descendible, to create a

cause of action for the unauthorized commercial use of an

individual's persona, and to provide a four-year statute of

limitations for bringing an action of that nature."

1999 Ohio Laws File 96 (S.B. 54).  The statute provides that "a person shall not use any aspect

of an individual's persona for a commercial purpose."  R.C. § 2741.02(A).  "Persona" is defined

as "an individual's name, voice, signature, photograph, image, likeness, or distinctive

appearance, if any of these aspects have commercial value."  R.C. § 2741.01(A).  The statute

grants a private right of action to "individual[s] whose right of publicity is at issue."  R.C. §

2741.06(A).  In such an action "at the election of the plaintiff and in lieu of actual damages, [a

violator is liable for] statutory damages in the amount of at least two thousand five hundred

dollars and not more than ten thousand dollars, as determined in the discretion of the trier of fact,

taking into account the willfulness of the violation, the harm to the persona in question, and the

ability of the defendant to pay a civil damage award."  R.C. § 2741.07(A)(1).

## III.     STANDARD OF REVIEW

If a complaint contains sufficient factual matter to state a claim to relief that is plausible

on its face, a motion to dismiss should be denied.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint has stated a claim

"plausible on its face" when it "pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In reviewing a

motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all

reasonable inferences from those facts in favor of plaintiffs.  *Al-Kidd v. Ashcroft*, 580 F.3d 949,

956 (9th Cir. 2009).  Although Rule 12(b)(6) does not require courts to assess the probability

that a plaintiff will eventually prevail, the allegations made in the complaint must cross "the line

between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. 662, 677

(*quoting Twombly*, 550 U.S. at 557).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC                                                    -4-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    ARGUMENT

### A.    Whitepages' Use of Plaintiff's Identity In Its Advertisements Violates Ohio's Right of Publicity Statute

#### 1.    Defendant Mischaracterizes Plaintiff's Complaint

Defendant relies upon a sentence in the Complaint that states Defendant could avoid liability if it "merely display[ed] the names of the searched individuals—without more identifying information—in their advertisements for their services" to argue that Plaintiff has admitted that Defendant could use Plaintiff's name in its advertisement without facing liability. MTD at 4.  But this is a misreading of the Complaint.  The Complaint centers around Defendant's use of Plaintiff's name and other identifying information in advertisements to market its services.  Compl. ¶¶ 5-11.  The Complaint does <u>not</u> challenge Defendant's ability to create a directory.

The sentence of the Complaint Defendant relies on is merely stating that if Defendant had only posted a name, either Plaintiff's or that of other putative class members, there would be no claim because there would be insufficient information to connect the name to any specific individual.  Compl. ¶ 16.  However, Defendant's advertisements as shown in the Complaint show Plaintiff's and the putative class's names, towns, zip codes, previous towns, and family members.  *Id.* ¶ 5.  Thus, there can be no question that the "Angela Kolebuck" who appears in Defendant's advertisements, is referring to the Plaintiff.  *Id.* ¶¶ 5, 17, 22-24.  Additionally, if the advertisements merely showed the name of Plaintiff and the putative class, they would not meet the economic value element of the statute.  Defendant is selling Plaintiff's and the putative class's names in conjunction with other personal details that allow one to discern Plaintiff's and the putative class's identities.  That conduct forms the crux of this case.  *See, e.g.*, *Lukis*, 454 F. Supp. 3d at 761 ("Whitepages did far more than use the name 'Stephanie Lukis' in advertising its monthly subscription services … .  Rather, Whitepages associated 'Stephanie Lukis' with a middle initial, an age range, two telephone numbers, a Chicago address, a Virginia address, and as a relation of Paul M. Lukis.").

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

Defendant then argues that Plaintiff still fails to state a claim under the Ohio Right of Publicity Statute because "Directory Information" does not have commercial value under the statute.  MTD at 5-6.  But again, this argument mischaracterizes the Complaint.  Plaintiff is not complaining that her name appears on Defendant's online reports, rather Plaintiff is complaining that her identity is being used by Defendant to advertise its products without her consent. Compl. ¶ 38 ("Whitepages used Plaintiff's and the putative class members' names and likenesses for the purpose of advertising or promoting its products without written consent.").

Defendant's citation to *Harvey v. Systems Effect, LLC*, 154 N.E.3d 293 (Ohio Ct. App. 2020) is inapposite.  In *Harvey*, the defendant was sued for its use of the plaintiff's image in internal training materials.  *Id.* at 295-97.  Specifically, the *Harvey* plaintiff sued over the realtor defendant's use of a trial court case involving herself and defendant in the defendant's online realtor course alongside a stock image of a separate house.  *Id.*  The case did not involve advertising or marketing materials of any kind.  Based on these facts, the *Harvey* court found that this use fell under a newsworthy exception in the statute and that the information was not used for a commercial purpose.  *Id.* at 307-08.

Here, by contrast, the identities of Plaintiff and the putative class are being used in Defendant's advertisements in order to entice viewers to purchase subscription services from Defendant.  Compl. ¶ 7.

### 2.    Plaintiff's Name As Used In Defendant's Advertisements Has Commercial Value

Whitepages next argues that the Ohio Right of Publicity statute does not apply because it did not use Plaintiff's identity for a "commercial purpose" as defined by the statute.  MTD at 4-6.  That is wrong.  Plaintiff alleges her identity was used to advertise products *separate* from her background report – Whitepages' subscription service.  Compl. ¶¶ 5-16 ("Whitepages uses [Plaintiff's identity] to advertise its monthly subscription services whereby a user can access and retrieve "Profiles" on any individual in its database.").  These other products include a $1 trial membership to view the individual reports of five other people, and a $19.99 subscription service that allows a purchaser to view unlimited reports.  Compl. ¶ 5.  Thus, "[t]he complaint

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC

-6-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

alleges that Whitepages used [Plaintiff's] identity, unique to her – her name, age, range, and city of domicile, along with the names of her relatives – in free previews to advertise, promote, and offer for sale its monthly subscription services.  That is a textbook example … of using a person's identity for a commercial purpose." *Lukis*, 454 F. Supp. 3d at 760; *see also id.* at 760-61 ("Whitepages used Lukis's identity to advertise not a background report regarding Lukis, but a monthly subscription service giving the purchaser access to background reports on anybody in Whitepages's database."); Compl. ¶¶ 5-16.  Defendant's use of Plaintiff's identity was plainly for a "commercial purpose."

In contrast to both *Harvey* and Defendant's characterization of this case, the Complaint centers around Plaintiff's identity being used to advertise Defendant's separate subscription service.   Plaintiff's name and other identifying information do not merely appear in Defendant's online directory, they appear on the advertisements that Defendant created to market a service without the consent of Plaintiff or members of the putative class.  Examples of these advertisements are below:



PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC

-7-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150



Compl. ¶ 5.

Indeed, Defendant's "commercial purpose" argument has already been rejected twice. *See Lukis v. Whitepages Inc.*, 454 F.Supp.3d 746 (N.D. Ill. 2020) (MTD denied); *Lukis v. Whitepages Inc.*, 2020 WL 6287369 (N.D. Ill. Oct 27, 2020) (Mtn. for Reconsideration denied). As Judge Feinerman stated:

> The court rejected that argument in its prior opinion, 454 F.
> Supp. 3d at 760-61, and adheres to that decision here.  It
> remains undisputed that Defendants use the free previews to sell
> subscriptions to their background reports.  Doc. 77 (19 C 4871)
> at ¶ 18; Doc. 66 (19 C 4892) at ¶ 8.  So, even if IRPA liability
> required that the defendant use the plaintiff's identity to
> promote a "separate product"—a matter that is far from clear,
> *see DeSmet ex rel. Estate of Hays v. Cnty. of Rock Island*, 848
> N.E.2d 1030, 1039 (Ill. 2006) (holding that "[w]here an
> enactment is clear and unambiguous," a court is "not at liberty
> to depart from the plain language and meaning of the statute by
> reading into it exceptions, limitations or conditions that the
> legislature did not express") – the free previews promote a
> subscription service that provides information separate from the
> aspects of a person's identity revealed in the free previews.  454

F. Supp. 3d at 760-61.  <u>Moreover, the background reports contain far more information than do the free previews, so the background reports quite plainly are a product "separate" from the aspects of identity included in the free previews.</u>

*Lukis,* 2020 WL 6287369 at *4 (emphasis added).

Here as in *Lukis*, Plaintiff's claim is based upon a statute that prohibits using an individual's name for advertising or soliciting the purchase of products or services without written consent.  *Compare* R.C. § 2741.02 ("a person shall not use any aspect of an individual's persona for a commercial purpose … [without] first obtain[ing] … written consent.") *with* 765 ILCS 1075/30 ("A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons").  Identical advertisements created by the same Defendant were found to plausibly give rise to a claim under the Illinois statute at issue in *Lukis*.  The Court should apply the same reasoning to this case.

**B.      Whitepages' Advertisements Are Not Protected By The First Amendment Or The Ohio Constitution**

**1.      Defendant's Challenged Conduct Is Commercial Speech**

Whitepages argues that it is immune to suit under both the First Amendment and Ohio Constitution because its use of Plaintiff's identity qualifies as "non-commercial speech."  MTD at 6-7.[1]  That is wrong.  Defendant's website advertises the partial background reports of individuals for the sole purpose of enticing website users to purchase background report services.  Compl. ¶¶ 7-13.  These advertisements fit into the definition of "speech that proposes a commercial transaction."  *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 482 (1989).  "Where the facts present a close question, 'strong support' that the speech should be characterized as commercial speech is found where the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation."  *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (*citing Bolger v. Youngs Drug Prods.*

---

[1] Note that in contravention to Fed. R. Civ. P. 5.1(a), Defendant has failed to file a notice of constitutional question despite questioning the constitutionality of a state statute.

1   *Corp.*, 463 U.S. 60, 65, 103 S. Ct. 2875, 77 L.Ed.2d 469 (1983)).  Here, Defendant's website

2   specifically solicits the purchase of its products – subscription background report services –

3   through an advertisement that teases portions of Plaintiff's identity.  This conduct meets the

4   definition of commercial speech from *Fox* as well as all three factors from *Bolger*.  Defendants

5   use of Plaintiff's name was in an advertising format; promoted products (subscriptions); and was

6   motived for commercial purposes.  463 U.S. at 67.  Defendant's arguments on this issue have

7   also been rejected.  *See Lukis*, 2020 WL 6287369, at *9 ("The free previews, if anything, present

8   a more difficult First Amendment case for Defendants than do the background reports because

9   they 'propose a commercial transaction' and thus fall 'within the core notion of commercial

10  speech.'  Whitepages does not explain why the free preview nevertheless qualify as

11  noncommercial speech.").

12       Defendant analogizes this case to *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952,

13  963 (9th Cir. 2012), arguing that like the phone directory in *Dex Media*, Defendant's website is

14  merely a "directory."  MTD at 7.  But *Dex Media* is inapposite.  In that case, the appellant was a

15  phone directory provider who was challenging a city ordinance that required it to obtain permits,

16  pay a fee for each directory distributed in the city, and establish an opt-out registry, through

17  which residents could decline to receive directories.  *Dex Media*, 696 F.3d at 952.  The court

18  found that "the Ordinance regulates a yellow pages phone book as a whole, not simply the

19  individual advertisements contained therein."  *Id.* at 957.  Additionally, the court noted that "the

20  noncommercial speech [did not] necessarily reference any of the products in the[] 

21  advertisements" and the "publication [was] qualitatively different from an advertising leaflet put

22  forth by an individual merchant to tout only its own products."  *Id.* at 959.  As such, the

23  challenged speech (the entire directory) "only satisf[ied] one *Bolger* factor:  that the publisher

24  ha[d] a commercial motive in publishing the directories" and the directories were not held to be

25  commercial speech.  *Id.* at 960.

26       Here, by contrast, Plaintiff is not challenging that she appears on Defendant's online

27  directory.  *See* Compl. ¶ 16 ("Whitepages could display the names of the searched individuals

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC

-10-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

1   without using the other identify information to advertise their subscription service [without

2   violating the Ohio right of publicity statute].").  Rather, Plaintiff is challenging the marketing

3   and advertisements that Defendant created to sell a subscription service using the identities of

4   the Plaintiff and members of the putative class.[2]

5        In the present case, Defendant's so-called "directory" is not freely available to any

6   website user, but instead is teased as part of Defendant's advertising strategy with information

7   about Plaintiff's identity.  *See* Compl. ¶ 7  ("The purpose behind Whitepages' free preview is

8   singular: to entice users to purchase Defendant's services.").  Defendant does not post third-

9   party advertisements alongside Plaintiff's identifying information; it advertises its own, for-pay

10  services. That makes this case different than *Dex Media* and more like *Bosley v. Wildwett.com*,

11  310 F. Supp. 2d 914 (N.D. Ohio 2004) in which the same issue was analyzed with regards to the

12  same statute.  In *Bosley*, the defendant used images of the plaintiff taken in a public place but

13  without her consent in its advertising to sell videos and website memberships.  *Id.* at 917-18.

14  The *Bosley* court stated that "common sense dictates that the use of images of Plaintiff Bosley to

15  sell video tapes, website memberships, or defendants' other wares … constitute commercial

16  speech [if it is protected at all]."  *Id.* at 928.  The same reasoning applies to this case.  The use of

17  Plaintiff's identity in advertisements to sell Defendant's subscription service is clearly

18  commercial speech.

19       Defendant's citation to *Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016) is also

20  inapposite.  MTD at 9.  In *Sarver*, the plaintiff was an Army bomb disposal expert who alleged

21  that his experiences were partially the basis of the Oscar-winning film *The Hurt Locker.  Id.* at

22  895-96.  The alleged misappropriation was the movie itself rather than any commercial speech

23  that proposed a commercial transaction. *Id.* at 905-06 ("In sum, *The Hurt Locker* is speech that

24  is fully protected by the First Amendment, which safeguards the storytellers and artists who take

25

26  [2] Defendant reliance upon *Nieman v. VersusLaw, Inc.*, 512 F. App'x 635 (7th Cir. 2013) fails for
    the same reason.  MTD at 7.  In *Nieman*, a plaintiff was suing an aggregation website for
27  disseminating publicly available court documents related to a suit that involved the plaintiff
    suing a previous employer.  *Id.* at 636.  The court ruled that the information itself was not
28  commercial speech.  *Id.* at 638.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC
-11-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

the raw materials of life – including the stories of real individuals, ordinary or extraordinary – and transform them into art, be it articles, books, movies, or plays.  If California's right of publicity law applies in this case, it is simply a content-based speech restriction.  As such, it is presumptively unconstitutional, and cannot stand unless Sarver can show a compelling state interest in preventing the defendants' speech. Because Sarver cannot do so, applying California's right of publicity in this case would violate the First Amendment.").  As a result, the *Sarver* decision was made in the context of strict scrutiny.  *Id.* at 905.  ("*The Hurt Locker* is not speech proposing a commercial transaction.  Accordingly, our precedents relying on the lesser protection afforded to commercial speech are inapposite.").  Here, by contrast, Defendant's advertisements are not an example of transforming Plaintiff's experiences into art.  Rather Defendant is using these advertisements to entice users who were curious enough to search for Plaintiff and members of the putative class to sign up for a subscription service.  Compl. ¶¶ 5, 7, 27.

Defendant also cites *Sarver* for the proposition that a state has no interest in "protecting a right of publicity in a person who has not 'ma[de] the investment required to produce a performance of interest to the public.'"  MTD at 9.  But that is misleading.  Rather the Ninth Circuit stated that "[t]he state has no interest in giving Sarver an economic incentive to live his life as he otherwise would."  *Sarver*, 813 F.3d at 905.  Indeed, the Ohio Supreme Court found that the degree of notoriety is only relevant to damages rather than any constitutional issue. *Vinci v. American Can Co.*, 459 N.E.2d 507, 509-10 (Ohio 1984) ("Appellants' alleged appropriation of the names and/or likenesses of the class members was based on a single advertising promotion … .  Regardless of the notoriety attained by the various class members … the invasion would nonetheless be actionable.  The degree of notoriety may impact on the amount of damages to which each class member may be entitled.").

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

1

2

        **2.**      **The Court Need Not Balance The Interests Because Defendant's Advertisements Impair The Informational Function of Advertising**

3

      In *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447

4

U.S. 557 (1980), the Supreme Court found that certain types of commercial speech are afforded

5

no protections.  *See Central Hudson*, 447 U.S. at 563–66 (1980) ("The First Amendment's

6

concern for commercial speech is based on the informational function of advertising … .

7

Consequently, there can be no constitutional objection to the suppression of commercial

8

messages that do not accurately inform the public about lawful activity.  The government may

9

ban forms of communication more likely to deceive the public than to inform it, … or

10

commercial speech related to illegal activity … .  For commercial speech to come within that

11

provision [the First Amendment], it at least must concern lawful activity and not be

12

misleading.").

13

      In *Bosley*, the court found that the speech similar to the advertisements at issue here to be

14

the type of commercial speech which is afforded no protection.  *See Bosley*, 310 F. Supp. 2d at

15

926 (finding that intermediate scrutiny was not required for the Ohio Right of Publicity Statute

16

when Defendant used a plaintiff's image to sell a product without consent and did not include

17

expressive or editorial content because "the informational function of advertising is impaired

18

when one wrongfully appropriates another's image for commercial purposes."); *see also*

19

*Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977) (holding that the First and

20

Fourteenth Amendments do not immunize defendants from damages for alleged infringement of

21

the right to publicity and that the right to publicity was constitutional and comports with the

22

First Amendment).  Following this reasoning, the court need not go into any balancing of the

23

interests because, as was the case in *Bosley* and *Zacchini*, the informational function of

24

advertising has been impaired by Defendant when it wrongfully appropriated another's image

25

for commercial purposes.

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC

-13-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

### 3.     The Ohio Right of Publicity Statute As Applied To The Instant Case Survives Intermediate Scrutiny

To the extent that the Court delves into the intermediate scrutiny analysis, Ohio's Right of Publicity Statute has already been upheld in almost identical circumstances:

> Ultimately, this Court finds that the First Amendment defense fails. The images of Plaintiff Bosley do not contain expressive or editorial content. Further, even if Defendants could convince this Court that the images are protected under the First Amendment as commercial speech, limitations imposed by the right to publicity would comport with the First Amendment. Laws governing the right to publicity have a substantial interest in regulating commercial speech. Individuals have a property right in their own identity. Allowing individuals the exclusive right to capitalize on their persona, like copyright law, encourages them to invest in developing their skills and talents. The right to publicity prevents others from depleting the economic value of one's persona without internalizing the costs. Furthermore, the right to publicity helps prevent deceptive commercial uses. In turn, remedies under the law advance that governmental interest without being more extensive than necessary.

*Bosley*, 310 F. Supp.2 d at 929

As in *Bosley*, the state of Ohio has a substantial interest in regulating commercial speech and protecting the property rights that Ohio residents have in their own identities. *Id.* The Ohio Right of Publicity Statute prevents others from depleting the economic value of one's persona without internalizing the costs. *Id.* Furthermore, the Ohio Right of Publicity Statute helps prevent deceptive commercial uses. *Id.* In turn, remedies under the law advance that governmental interest without being more extensive than necessary. *Id.*

This analysis is the same under both the United States Constitution and the Ohio Constitution. *See Eastwood Mall, Inc. v. Slanco*, 626 N.E.2d 59, 61 (Ohio 1994) ("The free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment, and that the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution."); *Cincinnati Arts Assn. v. Jones*, 777 N.E.2d 346, 349-50 (Ohio 2002) ("While the language of Ohio's Free Speech Clause differs from that of the language of the First

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC

-14-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

1    Amendment to the federal Constitution, Ohio courts look to the First Amendment to interpret

2    Section 11, Article I of the Ohio Constitution.").

3         That there is a hypothetically noncommercial purpose behind Defendant's website does

4    not create grounds to dismiss Plaintiff's Complaint on the pleadings.  Plaintiff specifically

5    alleges the opposite:  that Whitepages intentionally used her identity for commercial purposes.

6    Compl. ¶¶ 5, 7, 27.

7         **C.    The Communications Decency Act Does Not Have Any**
         **Bearing On The Dispute Because Whitepages' Advertisements**
8         **Were Created By Whitepages**

9         Defendant argues that Plaintiff's claim "is barred by the Communications Decency Act

10   (CDA)."  MTD at 9.  But that is wrong.  The CDA is an affirmative defense and like any other

11   affirmative defense, the Court should not grant Whitepages motion under the CDA unless

12   Plaintiff establishes the elements of that defense in her pleadings, Plaintiff does not.  *See ICF*

13   *Technology, Inc. v. Google, Inc.*, 2013 WL 6728826 at *4 (W.D. Wash Dec. 20, 2013)

14   (describing an assertion of immunity under § 230 of the CDA as an affirmative defense).  To the

15   contrary, Plaintiff specifically alleges that Whitepages "compiles and generates the content it

16   sells on its website."  Compl. ¶ 13.  Plaintiff has alleged that the advertisements shown in the

17   complaint were specifically created by Whitepages rather than by a third party.  Compl. ¶ 5.

18   This allegation is enough to establish Whitepages is an "information content provider" of the

19   content at issue in this case—and so the CDA should not apply.  47 U.S.C. § 230(c)(1); *Fair*

20   *Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th

21   Cir. 2008) ("This grant of immunity applies only if the interactive computer service provider is

22   not also an information content provider, which is defined as someone who is responsible, in

23   whole or in part, for the creation or development of the offending content.") (internal citations

24   omitted); *Chicago Lawyers' Committee For Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519

25   F.3d 666, 671 (7th Cir. 2008) (CDA does not apply where a defendant is responsible for the

26   creation of the allegedly unlawful content).

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

1         Nonetheless, Whitepages argues it is not the creator of the content because it "is merely a

2 passive transmitter of information provided by others." MTD at 10. This is assertion is

3 irrelevant because Plaintiff pleads the opposite. Compl. ¶ 13. And it is also believed to be

4 inaccurate. *Id.* Nonetheless, even if it were true that Defendant did not create the

5 advertisements designed to entice users to purchase its product, it is still liable. In a case relied

6 upon by Defendant, the Ninth Circuit held that "if the [website] publishes material that [it] does

7 not believe was tendered to [it] for posting online, then [it] is the one making the affirmative

8 decision to publish, and so [it] contributes materially to its allegedly unlawful dissemination…

9 [it] is thus properly deemed a developer and not entitled to CDA immunity." *Roommates.Com,*

10 *LLC*, 521 F.3d at 1171. Thus, even if the Complaint had asserted that the content at issue in the

11 case was the directory information as Defendant contends, which is not the case, there is no

12 suggestion in the Complaint that the third parties that created the information intended for it to

13 be posted online. As a result, even under Defendant's mutated version of the facts asserted in

14 the Complaint, Defendant would still be liable.

15         Finally, as is the case with Defendant's other arguments, the *Lukis* court has already

16 rejected Defendant's arguments. *See Lukis*, 454 F.Supp.3d at 763 ("On the present record,

17 Whitepages did not act as a mere passive transmitter or publisher of information that was

18 provided by another information content provider…. [r]ather, it is alleged to have actively

19 compiled and collated, from several sources, information regarding Lukis. … [t]he CDA

20 therefore does not shield Whitepages from liability.") (internal citations omitted).

21 **V.      CONCLUSION**

22         Whitepages used Plaintiff's persona to try and sell its products. As such it violated Ohio

23 Revised Code § 2741.01, *et. seq* and is liable to plaintiff and all other putative class members for

24 statutory damages. Plaintiff properly plead her claims and as caselaw holds, neither the First

25 Amendment nor the Communications Decency Acts, protect Defendant from being liable for its

26 illegal acts.

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC               -16-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150

1    Dated: March 29, 2021                    Respectfully submitted,

2                                              **BURSOR & FISHER, P.A.**

3

4                                              By:      */s/ Philip L. Fraietta*
                                                         Philip L. Fraietta

5
                                              Philip L. Fraietta (*Pro Hac Vice*)
6                                              888 Seventh Avenue
                                              New York, NY 10019
7                                              Telephone: (646) 837-7150
                                              Facsimile:  (212) 989-9163
8                                              E-Mail: pfraietta@bursor.com

9
                                              **CARSON NOEL PLLC**
10                                             Wright A. Noel (State Bar No. 25264)
                                              20 Sixth Avenue NE
11                                             Issaquah, WA 98027
                                              Tel: (425) 837-4717
12                                             Fax: (425) 837-5396
                                              E-Mail: wright@carsonnoel.com

13
                                              *Attorneys for Plaintiff*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 21-CV-00053-JCC

-17-

BURSOR & FISHER, P.A.
888 7th Ave, 3rd Floor
New York, NY 10106
Tel. (646) 837-7150